UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AMY M. COWAN,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

18-CV-236
DECISION AND ORDER

---

On February 13, 2018, the plaintiff, Amy M. Cowan, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On August 20, 2018, Cowan moved for judgment on the pleadings, Docket Item 7; on October 25, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 11; and on December 4, 2018, Cowan replied, Docket Item 13.

For the reasons stated below, this Court grants Cowan's motion in part and denies the Commissioner's cross-motion.

## BACKGROUND

### I. PROCEDURAL HISTORY

On October 31, 2013, Cowan applied for Supplemental Security Income benefits ("SSI"). Docket Item 6 at 15, 134. She claimed that she had been disabled since July 1, 2010, due to bipolar disorder. *Id.* at 134.

On December 26, 2013, Cowan received notice that her application was denied because she was not disabled under the Act. *Id.* at 143-50. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 151-54, which was held on May 12, 2016, *id.* at 109.[1] The ALJ then issued a decision on August 5, 2016, confirming the finding that Cowan was not disabled. *Id.* at 28. Cowan appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 6-8.

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Cowan's objection. Cowan was examined by several different providers, but only two psychiatrists—Laura C. Hanrahan, M.D., and Jessica L. Grudzien, M.D.—are most significant to this Court's review of Cowan's claims.

### A. Laura C. Hanrahan, M.D., Psychiatrist

The ALJ determined that Dr. Hanrahan, a psychiatrist, was one of Cowan's treating physicians. Docket Item 6 at 23. Cowan saw Dr. Hanrahan regularly between the summer of 2014 and the summer of 2015. *See, e.g., id.* at 360-64 (July 24, 2014); 365-67 (Sept. 4, 2014); 368-71, 443-46 (Oct. 2, 2014); 372-75 (Oct. 30, 2014); 376-78 (Dec. 18, 2014); 379-81 (Jan. 29, 2015); 382-84 (Feb. 26, 2015); 447-49 (Mar. 26, 2015); 450-52 (Apr. 30, 2015); 468-70 (June 25, 2015); 465-66 (June 30, 2015). Dr. Hanrahan's treatment notes indicate that Cowan had psychological conditions which were treated with mood stabilizers and antidepressants. *Id.* at 361, 363.

---

[1] On March 21, 2016, Cowan appeared before an ALJ, and he granted her request for a postponement. Docket Item 6 at 127-32.

On June 18, 2015, Dr. Hanrahan completed a medical statement regarding Cowan. *Id.* at 454-56. Dr. Hanrahan diagnosed Cowan with appetite disturbance with change in weight, sleep disturbance, psychomotor agitation or retardation, decreased energy (at times), difficulty concentrating or thinking, and generalized persistent anxiety, apprehensive expectation. *Id.* at 454. Although Cowan once had recurrent severe panic attacks, Dr. Hanrahan noted that they were less frequent and occurred only several times per month. *Id.*

Dr. Hanrahan opined that Cowan's psychiatric conditions imposed mild restrictions on activities of daily living and mild to moderate restrictions on her ability to maintain social functioning. *Id.* She noted that Cowan had deficiencies in concentration, persistence, or pace—resulting in frequent failure to complete tasks in a timely manner in work settings or elsewhere. *Id.* And she noted also that when Cowan did try to work, she had "[r]epeated episodes of deterioration or decompensation . . . which cause[d her] to withdraw from the situation or experience." *Id.* As a result of these issues, Cowan "hasn't worked in several years." *Id.* Although Cowan had "occasional panic attacks," they did not completely preclude her from functioning outside her home. *Id.* at 455.

Dr. Hanrahan opined that Cowan had several work limitations resulting from her mental impairments. First, she found that Cowan was "markedly impaired" in the following areas: (1) understanding, remembering, and carrying out detailed instructions; (2) maintaining attention and concentration for extended periods; (3) completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and

3

length of rest periods; and (4) traveling in unfamiliar places or using public transportation. *Id.* at 455-56. Second, she found that Cowan was "moderately impaired" in the following areas: (1) remembering locations and work-like procedures; (2) understanding, remembering, and carrying out short and simple instructions; (3) sustaining an ordinary routine without special supervision; (4) working in coordination and proximity with others without being distracted by them; (5) making simple work-related decisions; (5) interacting appropriately with the general public; (6) accepting instructions and responding appropriately to criticism from supervisors; (7) getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; (8) responding appropriately to changes in the work setting; and (9) setting realistic goals or making plans independently of others. *Id.* Finally, Dr. Hanrahan found that Cowan was not significantly impaired in (1) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; (2) asking simple questions or requesting assistance; (3) maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; and (4) being aware of normal hazards and taking appropriate precautions. *Id.*

### B. Jessica L. Grudzien, M.D., Psychiatrist

The ALJ determined that Dr. Grudzien, a psychiatrist, was another of Cowan's treating physicians. Docket Item 6 at 24. Dr. Grudzien treated Cowan several times later in 2015. *See, e.g., id.* at 461-64 (July 27, 2015); 458-60 (Aug. 24, 2015); 491-93 (Nov. 16, 2015). In her memorandum of law, Cowan notes that Dr. Grudzien took over for Dr. Hanrahan at the Erie County Medical Center, where Cowan was being treated for her mental impairments. Docket Item 7-1 at 7. Dr. Grudzien's treatment notes

indicate that Cowan was treated for her mental impairments with antidepressants. *Id*. at 463.

On November 30, 2015, Dr. Grudzien completed a medical statement regarding Cowan. Docket Item 6 at 495-97. Dr. Grudzien diagnosed Cowan with sleep disturbances and difficulty concentrating or thinking. *Id*. at 495. She found that Cowan had mild limitations in her activities of daily living and her ability to maintain social functioning. *Id*. Like Dr. Hanrahan, Dr. Grudzien opined that Cowan had deficiencies in concentration, persistence, or pace that caused her to frequently fail to complete tasks in a timely manner in work settings or elsewhere. *Id*. For example, she found that Cowan had difficulty completing household chores without distraction. *Id*. Dr. Grudzien also opined that Cowan had repeated episodes "of deterioration or decompensation . . . which cause [her] to withdraw from the situation or experience exacerbation of signs and symptoms which may include deterioration of adaptive function." Specifically, Dr. Grudzien noted that Cowan "reports panic when around crowds or previous work environments." *Id*. Dr. Grudzien found that that Cowan was not completely unable to function independently outside her home due to panic attacks but noted that she previously reported panic attacks when attending appointments with social services. *Id*. at 496.

Dr. Grudzien opined that Cowan had several work limitations resulting from her mental impairments. *Id*. at 496-97. First, she found that Cowan was "markedly impaired" in the following areas: (1) maintaining attention and concentration for extended periods; (2) working in coordination and proximity with others without being distracted by them; and (3) completing a normal workday and workweek without

5

interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods.  *Id.* at 496.  Second, she found that Cowan was "moderately impaired" in the following areas: (1) remembering locations and work-like procedures; (2) understanding, remembering, and carrying out detailed instructions; (3) interacting appropriately with the general public; (4) accepting instructions and responding appropriately to criticism from supervisors; (5) getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; (6) responding appropriately to changes in the work setting; (7) traveling in unfamiliar places or using public transportation; and (8) setting realistic goals or making plans independently of others.  *Id.* at 496-97.  Dr. Grudzien found that Cowan was not significantly impaired in (1) understanding, remembering, and carrying out short and simple instructions; (2) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; (3) sustaining an ordinary routine without special supervision; (4) making simple work-related decisions; (5) asking simple questions or requesting assistance; (6) maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; and (7) being aware of normal hazards and taking appropriate precautions.  *Id.*

     Dr. Grudzien commented that Cowan "would benefit from [a] neuropsych testing referral" but that it "has been challenging to get authorization for [such testing] from her managed care provider."  *Id.* at 497.  She noted that such an evaluation "would be very helpful as we strongly suspect [that Cowan has] a learning disability."

## III. THE ALJ'S DECISION

In denying Cowan's application, the ALJ evaluated Cowan's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled

7

and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Cowan had not engaged in substantial gainful activity since October 31, 2013, the application date. Docket Item 6 at 17. At step two, the ALJ found that Cowan had the following severe impairments: major depressive disorder, bipolar disorder, and anxiety disorder. *Id.* At step three, the ALJ determined that Cowan did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 18.

In assessing Cowan's RFC, the ALJ determined that Cowan could perform

> a full range of work at all exertional levels but with the following non-exertional limitations: unable to perform complex work (defined as work involving multiple, simultaneous goals and objectives, or work requiring an individual to independently determine the quantity, quality or method or production) and limited to only occasional contact with the public.

*Id.* at 19. At step four, the ALJ then determined that Cowan had no past relevant work. *Id.* at 27. Finally, at step five, the ALJ determined that the Commissioner sustained her burden of establishing that Cowan had the RFC to perform "jobs that exist in significant numbers in the national economy." *Id.* Specifically, the ALJ credited the vocational

expert's testimony that Cowan could perform jobs such as an office helper or a mail clerk. *Id.* at 27-28.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Cowan makes two arguments that the ALJ erred. Docket Item 7-1 at 1. First, she argues that "[t]he ALJ failed to properly apply the treating physician rule to the

9

opinions of Drs. Hanrahan and Grudzien." *Id*. Second, she argues that "the ALJ failed to properly account for [her] stress in the RFC finding." *Id*.

"Social Security Administration regulations, as well as [Second Circuit] precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Id*. "The opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Id*. (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). "Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Id*. "In doing so, it must 'explicitly consider' the following, nonexclusive '*Burgess* factors': '(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id*. at 95-96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "At both steps, the ALJ must 'give good reasons in its notice of determination or decision of the weight it gives the treating source's medical opinion.'" *Id*. at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

"An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight . . . is a procedural error." *Id*. "If 'the Commissioner has not otherwise provided good reasons for its weight assignment,' [courts] are unable to conclude that the error was

harmless and consequently remand for the ALJ to 'comprehensively set forth its reasons.'" *Id.* (quoting *Halloran*, 362 F.3d at 33).

I.  **DR. HANRAHAN'S OPINIONS**

The ALJ addressed Dr. Hanrahan's opinions in the following manner:

> I give great weight to the opinion of Dr. Hanrahan, wherein she opined that [Cowan] had mild limitations with activities of daily living and mild to moderate limitations with social functioning and deficiencies of concentration, persistence and pace (Exhibit 15F, page 2). However, I give little weight to Dr. Hanrahan's opinion with regard to marked limitations, as they are inconsistent with the mental status examinations and GAF scores. Moreover, Dr. Hanrahan's opinion with regard to marked limitations with travel was inconsistent with [Cowan's] testimony. For example, [Cowan] testified [that] she recently traveled to West Va., takes cabs and walked to the library 20 times a month.

Docket Item 6 at 26. That largely conclusory analysis "fail[ed] to 'explicitly' apply the *Burgess* factors when assigning weight" to Dr. Hanrahan's opinions. *Estrella*, 925 F.3d at 96.

More specifically, the ALJ did not consider "the first *Burgess* factor—'the frequency, length, nature, and extent of [Dr. Hanrahan's] treatment'—before weighing the value of the opinion." *See id.* (quoting *Selian*, 708 F.3d at 418). Nowhere in the ALJ's decision, for example, is the fact that Dr. Hanrahan regularly saw Cowan for a year. Nor did the ALJ address the fourth *Burgess* factor: whether the physician is a specialist. In fact, there is nothing in the ALJ's decision to suggest that he even considered Dr. Hanrahan's specialty as a psychiatrist when assessing her opinions about the nature and severity of Cowan's mental impairments.

What is more, "a searching review of the record" fails to "assure" this Court "that the substance of the treating physician rule was not traversed." *Id.* (quoting *Halloran*, 362 F.3d at 32). For example, the ALJ's failure to address the first *Burgess* factor is

11

"especially relevant here because the first *Burgess* factor, and therefore evidence supporting its satisfaction, is of heightened importance in the [mental health] context." *Id.* at 97. "Cycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for the ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)). So, for example, discounting Dr. Hanrahan's opinion about travel simply because Cowan "recently traveled to West Va., takes cabs[,] and walks to the library 20 times a month," Docket Item 6 at 26, was error, and that error was heightened because the ALJ did not address "the frequency, length, nature, and extent" of Dr. Hanrahan's treatment, *Estrella*, 925 F.3d at 96 (quoting *Selian*, 708 F.3d at 418).

As the Seventh Circuit has noted, a "person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days. . . . Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) (quoted in *Estrella*, 925 F.3d at 97). Here that may well be the case for Cowan. And considering the frequency and the length of Dr. Hanrahan's treatment of Cowan therefore might well be important in "weighing the value of the opinion." *See Estrella*, 925 F.3d at 96.

## II. DR. GRUDZIEN'S OPINIONS

The ALJ similarly addressed Dr. Grudzien's opinions:

> I give partial weight to the opinion of Dr. Grudzien (Exhibit 19F). Dr. Grudzien opined that the claimant had mild limitations performing activities

12

> of daily living and engaging in social functioning (Exhibit 19F page 2). Although Dr. Grudzien suspected a learning disorder, there is no clear medically determinable impairment with regard to this condition. I give little weight to Dr. Grudzien's opinion with regard to marked limitations, as it is inconsistent with mental examinations and GAF scores, which document mild to moderate limitations.

Docket Item 6 at 26. For the same reasons that the ALJ erred in a manner that was not harmless in failing to apply the *Burgess* factors in addressing Dr. Hanrahan's opinions, he also erred in the same way regarding Dr. Grudzien's opinions.[2]

## **CONCLUSION**

For the foregoing reasons, the case is remanded to the ALJ so that he can reconsider Cowan's claim consistent with the procedural mandates of the SSA and Second Circuit precedent. On remand, the ALJ should apply all the *Burgess* factors in determining the appropriate weight to give to the opinions of Cowan's treating physicians.

---

[2] The Commissioner argues that "there were a number of inconsistencies between Dr. Hanrahan's and Dr. Grudzien's opinions." Docket Item 11-1 at 22. "[I]n reviewing agency action, a court is ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record," *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019), and this argument is advanced by the Commissioner only in his brief. Because it was not an explicit reason given by the ALJ for discounting the treating physicians' opinions, the Commissioner's argument to this Court is not well taken.

In any event, Dr. Hanrahan's and Dr. Grudzien's opinions were largely consistent, and the differences that the Commissioner notes were a matter of degree—for example, whether certain impairments were "marked" or "moderate." *See* Docket Item 11-1 at 22; *compare* Docket Item 6 at 454-56 *with id.* at 495-97. The similarities between the opinions of the two treating psychiatrists is another reason why discounting those opinions without explicitly considering the *Burgess* factors was not harmless error.

The Commissioner's motion for judgment on the pleadings, Docket Item 11, is DENIED, and Cowan's motion for judgment on the pleadings, Docket Item 7, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.[3]

SO ORDERED.

Dated:     July 8, 2019
             Buffalo, New York

                                         *s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE

---

[3] Cowan also argues that "the ALJ failed to properly account for [her] stress in the RFC finding." Docket Item 7-1 at 1. Because her "case must return to the agency either way for the reasons already given, the Commissioner will have the opportunity on remand to obviate this dispute altogether by giving express consideration to" Cowan's stress in evaluating her RFC. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 94 (2d Cir. 2019).

14